IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01251-MEH

CINDY LOU VIGIL,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

# ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Cindy Lou Vigil appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and her application for supplemental security income benefits ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83c. Jurisdiction is proper under 42 U.S.C. § 405(g). The Court finds the ALJ did not err by not specifically addressing the effects of Ms. Vigil's obesity when he formulated her residual functional capacity ("RFC"). In addition, the ALJ appropriately considered the effects of Ms. Vigil's subjective symptoms in his determination of her RFC. Finally, the ALJ properly applied the treating physician rule. Accordingly, the Court affirms the ALJ's decision that Ms. Vigil was not disabled from October 20, 2015, through the date of the decision.

**BACKGROUND**

I.  **Ms. Vigil's Conditions**

Plaintiff Cindy Lou Vigil was born on October 20, 1965; she was forty-nine years old when she filed her application for DIB and SSI. [AR 170, 176] She originally indicated she became disabled on February 23, 2015, [AR 177] but later amended her alleged onset date to October 20, 2015. [AR 47]

The record does not suggest any individual event triggered Ms. Vigil's alleged disability. From April 2014 to January 2015, she frequently visited her treating physician, Dr. Clandra Robinson, at Salud Family Health Centers. During this time, Ms. Vigil was treated for a number of conditions, including an abscess, [AR 431, 434] diabetes, [AR 42, 422, 427] and influenza. [AR 402] Then, from February 2015 to July 2016, the record does not indicate she required regular medical treatment.

In July 2016, Ms. Vigil began experiencing abdominal pain, which soon culminated in a diagnosis of a hernia and a cirrhotic liver. [AR 578] On August 17, 2016, Ryan Gerry, M.D., performed a hernia repair surgery with mesh. [AR 653] About three weeks later, Ms. Vigil required another procedure, because the postoperative wound had become infected. [AR 490] On September 8, 2016, she underwent a procedure to have the infected mesh removed and an abdominal wall abscess drained. [AR 499] She was discharged from the hospital on September 14, 2016. [*Id.*] Ms. Vigil was monitored during her post-operation recovery in home health care. *See, e.g.*, [AR 796, 833, 841, 876, 906, 955, 980] On December 14, 2016, Brittani Nelson, RN, concluded the wound was healed and further home health care was no longer necessary. [AR 1023]

On May 26, 2017, Dr. Robinson completed a Physical Residual Functional Capacity Questionnaire that summarized her assessment of Ms. Vigil's physical capabilities. [AR 1063-67] Dr. Robinson stated Ms. Vigil had diagnosed conditions of cirrhosis of the liver, diabetes mellitus, obstructive sleep apnea, hypertension, chronic pain disorder, and obesity. [AR 1063] She opined that Ms. Vigil could walk a maximum of one block before needing to rest, sit for forty-five minutes at a time before needing to change positions, and stand for a maximum of five minutes before needing to sit down. [AR 1064] She also stated that Ms. Vigil could sit for a maximum of two hours and stand for less than two hours in an eight-hour workday. [AR 1065] Addressing physical restrictions, Dr. Robinson stated Ms. Vigil could use her hands and arms less than 5% of a workday. [*Id.*] She concluded by stating Ms. Vigil had been limited to these maximums since 2015. [AR 1067]

## II. Procedural History

On May 4, 2015, the SSA initially denied her application for DIB and SSI. [AR 104-07] Ms. Vigil subsequently requested a hearing before an ALJ, which took place on June 8, 2017. [AR 43, 112] On June 29, 2017, the ALJ issued an opinion holding that Ms. Vigil is not disabled. [AR 20-35] According to the ALJ, Ms. Vigil's diagnosed conditions of residuals of hernia repair surgery, peripheral neuropathy, diabetes mellitus, obesity, and depression were severe impairments, but did not meet the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 26-28] The ALJ also held that while Ms. Vigil was no longer able to perform any of her past relevant work, she maintained an RFC that allowed her to perform work that exists in the national economy. [AR 32-34]

The SSA Appeals Council denied Ms. Vigil's request for review on April 30, 2018, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-4]; *see* 20 C.F.R.

§ 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."). Ms. Vigil timely appealed the ALJ/Commissioner's final decision to this Court. ECF No. 1.

## III. Hearing Testimony

At the hearing held before the ALJ on June 8, 2017, [AR 43-72] Ms. Vigil and a vocational expert ("VE") testified. [AR 43] The ALJ first questioned Ms. Vigil about her work history. She stated she had previously worked handling patient records and accounts receivable, as a purchasing agent, and as a social worker. [AR 49-50]

The ALJ then then inquired about her employment at Greenleaf Wholesale Florist, where she worked from 2015 to 2016 in accounts receivable. *See* [AR 50-53] Ms. Vigil testified that she made approximately $3,600 in the last quarter of 2015, which was after her amended date of initial disability on October 20, 2015. [AR 50] She stated that she worked at Greenleaf until the company laid her off in July 2016. [AR 51, 53] After that, she looked for work until she required hernia surgery in August 2016. [AR 53] She testified that when she had recovered from the surgery and subsequent infection, she was no longer able to work due to constant fatigue and chronic pain in her hands, feet, neck, and back. [*Id.*]

The ALJ also asked Ms. Vigil about her pursuit of a master's degree during the same period. Ms. Vigil testified she had been in a master's program part time for four to five years, working toward a degree in criminal justice and vocational rehabilitation. [AR 56, 65] She stated she was registered to attend fall class in 2016 but had to withdraw due to her medical conditions. [AR 54-55] Still, she took the comprehensive exam to receive the degree in June 2017 but did not pass. [AR 55]

Ms. Vigil next testified about how her conditions affect her mental and physical capabilities. [AR 56-64] She stated that her hepatic encephalopathy caused her thinking to be "confused" and "sketchy." [AR 56-57] She stated she could not maintain concentration during a two-hour movie. [*Id.*] Additionally, she had reduced strength and numbness in her upper extremities due to idiopathic peripheral neuropathy; she did not have enough strength to open a jar of pickles and could not operate buttons or zippers; she only had the strength to perform a job that required her to lift two to three pounds for a third of an eight-hour workday; she could walk a maximum of one block before she would need to stop and rest; and she could sit in a desk chair or stand in one place for a maximum of ten minutes before she would need to take a break. [AR 57-59]

Ms. Vigil said she suffered from depression, which decreased her energy level and appetite and kept her from wanting to participate in activities. [AR 59-60] She also testified that she experienced anxiety that affected her ability to concentrate and kept her from sleeping for more than two hours at a time. [AR 60-61]

Ms. Vigil discussed her ability to do routine tasks around the house. She stated she could hand wash dishes "over a period of time" and do small loads of laundry. [AR 61] She said that she could perform these tasks for about ten minutes before she would need to take a fifteen-minute break. [AR 62] She testified that she could not cook, vacuum, or perform yardwork. [AR 61-62] Ms. Vigil stated that when her symptoms were low, she would have the energy to go to the grocery store or play with her grandkids. [AR 64]

The ALJ then turned to the VE, who testified that an individual with Ms. Vigil's age, education, work experience, and the following limitations—a maximum of light work; no assembly line work; and occasionally stoop, kneel, crouch, crawl, climb stairs, and balance—could

5

not perform her past work of accounting clerk, supply clerk, and case worker but could perform the jobs of cashier, housekeeping maid, and mail clerk. [AR 66-67] With the additional limitations of frequent handling and fingering, the person could still perform those jobs. [AR 67] The VE testified that there are no jobs in the economy for such a person who is off task more than 10% of the time. [*Id.*] A person with only the first set of limitations but was also restricted to occasional bilateral handling, fingering, and feeling could not perform the jobs of cashier, housekeeping maid, and mail clerk but could perform the jobs of counter clerk, furniture rental clerk, and investigator of dealer accounts. [*Id.*] A person who also could only stand or walk for two hours and sit for six hours in an eight-hour workday could not perform any job in the national economy. [AR 68-69] Also, no work would be available for such a person at the sedentary level. [AR 69]

The ALJ issued an unfavorable decision on May 5, 2015. [AR 23-35]

## **LEGAL STANDARDS**

### I. **SSA's Five-Step Process for Determining Disability**

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step one determines whether the claimant is presently engaged in substantial gainful activity. If she is, she is not disabled. *See* 20 C.F.R. § 404.1520. Step two analyzes whether the claimant has a medically severe impairment or combination of impairments, as governed by 20

C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See id.* Step three analyzes whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment is listed or is equivalent to a listed impairment, she is presumed to be disabled. If the impairment does not satisfy step three, the ALJ must proceed to step four, which requires the claimant to show that her impairment(s) and RFC prevent her from performing work that she has performed in the past. If the claimant is capable of performing her previous work, either as she performed it or as it is generally performed in the national economy, she is not disabled. *See* 20 C.F.R. § 404.1520(e), (f); *see also Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) ("[C]laimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." (quoting *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993))). However, if the claimant establishes a prima facie case of disability based on the previous four steps, the analysis proceeds to step five, where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education, and work experience. *See* 20 C.F.R. § 404.1520(g).

## II. Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn

therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The Court may not reweigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Bryant v. Commissioner, SSA*, 753 F. App'x 637, 639-40 (10th Cir. 2018).

## ALJ'S RULING

The ALJ ruled that Ms. Vigil met the insured status requirements of the Social Security Act through December 31, 2020. [AR 23] Next, the ALJ determined that she had engaged in substantial gainful employment during the fourth quarter of 2015. [AR 26] As such, the ALJ determined that she was not disabled during this period. [*Id.*] However, he also found that there had been a continuous twelve-month period during which Ms. Vigil did not engage in substantial gainful activity and continued to address that period. [*Id.*]

At step two, the ALJ determined that Ms. Vigil had severe impairments of hernia repair surgery, peripheral neuropathy, diabetes mellitus, obesity, and depression. [*Id.*] The ALJ also recognized that medical evidence in the record established findings of bilateral carpal tunnel syndrome and nonalcoholic steatohepatitis, but concluded that these impairments failed to meet the timing or severity requirements to support a determination that they were "severe." [*Id.*] Still,

he stated that he considered all of these impairments when he formulated Ms. Vigil's RFC. [AR 27]

Moving to step three, the ALJ found that Ms. Vigil's impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*] He also concluded that none of Ms. Vigil's mental impairments met the requirements of listing 12.04 or the "paragraph B" criteria. Specifically, he found that Ms. Vigil had only mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. [*Id.*] He determined she had moderate limitations in concentrating, persisting, and maintaining pace. [*Id.*] Because Ms. Vigil did not have two "marked" limitations in these categories, he found that none of her mental impairments were "severe." [AR 28]

Before proceeding to step four, the ALJ formulated Ms. Vigil's RFC. He concluded that she could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following additional limitations: she could only stoop, kneel, crouch, crawl, and climb stairs occasionally; she could only handle and finger frequently; she is limited to simple, routine work; and she cannot perform assembly line work. [*Id.*] In arriving at this RFC, the ALJ relied on Ms. Vigil's symptoms and the extent those symptoms could be reasonably accepted as consistent with the objective medical evidence and the opinions of her treating physician and other examiners. [*Id.*] The ALJ found that Ms. Vigil's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but her statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the medical evidence as well as other evidence in the record. [AR 29]

Specifically, the ALJ noted that Ms. Vigil was able to remain "quite active" during her alleged period of disability. [*Id.*] As an initial matter, he noted that she reported earnings reflecting

substantial gainful activity from October 20, 2015, to December 2015, and that her work only terminated because she was laid off. [AR 29-30] Further, she continued to look for employment until she detected her hernia in mid-2016. [AR 30] He also noted that she was enrolled in a master's degree program for the four years preceding the hernia surgery and resumed pursuing the degree after her complications subsided in December 2016. [*Id.*] The ALJ recognized that Ms. Vigil's treatment records from January to April 2016 were sparse and unremarkable. [AR 29-30] Finally, he noted that Ms. Vigil had applied for state unemployment benefits after her alleged onset date, and addressed the apparent inconsistency in claiming to be able to work for the purpose of unemployment insurance benefits while simultaneously claiming she could not work for the purpose of social security benefits. [AR 31] Summarizing, the ALJ determined that Ms. Vigil's "reported activities could not be performed if [her] physical and mental limitations were as significant as she alleged and that discrepancies in [her] testimony and the evidence of record diminish the persuasiveness of [her] subjective complaints and alleged limitations." [*Id.*]

The ALJ also addressed the opinions of several health care professionals who had opined as to Ms. Vigil's physical and mental abilities. First, he discussed the opinion of Mary Ann Wharry, Psy.D., who had concluded that Ms. Vigil's mental impairments were not severe. He afforded this opinion little weight, because it was based on the medical evidence as of May 2015, and there was contrary evidence in the record. [*Id.*]

The ALJ then addressed several letters prepared by medical professionals who indicated Ms. Vigil required accommodations with respect to her academics. The ALJ afforded these opinions partial weight, because they were not opinions of her ability to work. Nonetheless, he considered the opinions when determining Ms. Vigil's RFC, and they contributed to his conclusion that she was limited to unskilled work. [AR 31-32]

Finally, the ALJ considered the opinion of Ms. Vigil's treating physician, Dr. Robinson, who opined in a Medical Source Statement completed in May 2017 that Ms. Vigil had significant physical limitations. [AR 32] Among those restrictions, Dr. Robinson concluded Ms. Vigil could walk for one block without rest and stand for five minutes at time. She said Ms. Vigil required a job that permitted her to shift from sitting, standing, and walking at will as well as to take unscheduled breaks every two hours. [*Id.*]

The ALJ afforded Dr. Robinson's opinion little weight despite her status as a treating physician, because the opinion was not consistent with the evidence in the record as a whole. Specifically, the ALJ noted Ms. Vigil's unremarkable treatment history until her hernia repair surgery in August 2016. [*Id.*] He further noted that the hernia condition improved by early 2017, and Ms. Vigil sought to return school soon thereafter. [*Id.*] The ALJ stated nothing in the record supported such significant limitations, particularly citing to Ms. Vigil's attendance in classes during the relevant period. [*Id.*] As such, he concluded that the record did not contain any opinion from a treating or examining source that indicated Ms. Vigil was disabled or had any limitation greater than his determination of her RFC. [*Id.*]

At step four, the ALJ determined that Ms. Vigil was unable to perform any of her past relevant work. [AR 32-33] At step five, he found jobs exist in the national economy that Ms. Vigil was able to perform. [AR 33-34] To arrive at this conclusion, the ALJ relied on the opinion of the VE, who testified that a person with Ms. Vigil's age, education, work experience, and RFC could perform the jobs of cashier, housekeeping cleaner, and mail clerk. [AR 34] He further noted that even if he arrived at a more restrictive RFC that included only occasionally handling and fingering, the VE testified that she would still be able to perform the jobs of counter clerk, investigator–auto accounts, and furniture rental clerk. [*Id.*] Based on these findings, the ALJ

determined that Ms. Vigil had not been disabled from February 23, 2015[1] through the date of the decision. [*Id.*]

## ISSUES ON APPEAL

On appeal, Ms. Vigil alleges the following grounds for reversal of the Commissioner's decision: (1) the ALJ erred by failing to adequately consider Ms. Vigil's morbid obesity when he determined her RFC; (2) the ALJ erred by failing to make adequate findings at step four regarding the functional effects of her subjective symptoms, including chronic pain, and by assigning physical RFC restrictions related only to her objective symptoms; and (3) the ALJ erred by failing to apply the correct legal standard in weighing the opinion of Ms. Vigil's treating physician, and his decision to afford the opinion little weight was not supported by substantial evidence. ECF No. 16 at 5.

## ANALYSIS

**I.     The ALJ's Failure to Discuss Ms. Vigil's Obesity when Determining Her RFC**

Ms. Vigil first argues that remand is necessary, because the ALJ did not specifically consider the effects of her obesity when he determined her RFC. An ALJ must consider "the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (quoting SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002)). "'Although the ALJ is required to consider the effects of obesity when assessing the claimant's RFC,' [he or she] may 'not make assumptions about the severity or functional effects of obesity combined with other impairments' but instead must

---

[1] The ALJ's decision concluded that Ms. Vigil had not been disabled from February 23, 2015, to the date of his decision, [AR 34] but previously noted that she had amended her alleged onset date to October 20, 2015. *See* [AR 23]

12

'evaluate each case based on the information in the case record[.]'" *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (citation omitted) (quoting SSR 02-1p, 2000 WL 628049, at *1, *6).

Here, Ms. Vigil argues the ALJ erred, because he found that her obesity was a severe impairment but did not explicitly consider it (or SSR 02-1p) when determining her RFC. To be sure, Ms. Vigil's statement of the ALJ's decision is correct—he found Ms. Vigil's obesity was a severe impairment at step two, *see* [AR 26] but did not explicitly discuss it during his analysis of her RFC, *see* [AR 28-32] Still, the ALJ said he considered all her impairments when formulating her RFC. [AR 27] Based on this omission alone, Ms. Vigil argues remand is warranted. The Tenth Circuit has repeatedly rejected this argument.

The Tenth Circuit has determined that an ALJ's failure to explicitly discuss a claimant's obesity or SSR 02-1p during the formulation of the claimant's RFC is not grounds for remand when the claimant has "not discuss[ed] or cite[d] to any evidence showing that obesity further limited" the claimant's RFC more than the ALJ's final determination. *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (finding remand was not warranted despite the court's conclusion that the ALJ "could have provided a more particularized discussion of the effects of [the claimant's] obesity on" his RFC); *see, e.g.*, *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (affirming the ALJ, even though he or she "did not specifically mention obesity in the RFC determination, but included specific limitations and restrictions for stooping, kneeling, and crouching"); *Smith*, 625 F. App'x at 899 (affirming an ALJ's decision when the ALJ concluded the claimant's obesity was a severe impairment, but the ALJ "never analyzed or discussed [the claimant's] obesity, including in [the ALJ's] RFC analysis"); *Fagan v. Astrue*, 231 F. App'x 835, 837 (10th Cir. 2007) ("Although the ALJ did not reference SSR 02–01p or explicitly examine the

impact of [the claimant's] obesity on each of her (non-severe) impairments, we have reviewed the record and do not believe these omissions require a remand under the facts of this case.").

Here, the ALJ stated he considered all of Ms. Vigil's impairments when he formulated her RFC. The Tenth Circuit's "general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter." *Arles*, 438 F. App'x at 740 (alteration in original) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Thus, I do not agree with Ms. Vigil's argument that the ALJ's decision does not "indicate that [her obesity] was considered at all in assigning the RFC." ECF No. 16 at 19. Further, Ms. Vigil "has not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations" than those established by the ALJ's RFC. *Smith*, 625 F. App'x at 899. The Tenth Circuit does not require an ALJ to "note the absence of any evidence that her obesity resulted in additional functional limitations or exacerbated any other impairment." *Id.* Therefore, this argument does not warrant remand.

## II. The ALJ's Evaluation of Ms. Vigil's Subjective Symptoms

Ms. Vigil argues that the ALJ's conclusions about the limiting effects of her subjective symptoms is not supported by substantial evidence. ECF No. 16 at 21. Specifically, she asserts that the ALJ's conclusion about her subjective symptoms is not consistent with 20 C.F.R. § 404.1529 and SSR 16-3p. When evaluating the limiting effects of an individual's symptoms, an ALJ is to consider:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

14

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).

Here, Ms. Vigil objects to the ALJ's evaluation of her subjective complaints about her medical symptoms. The ALJ determined that "[n]ot only does the objective medical evidence fail[] to support fully [her] allegations of disabling symptoms . . . , but considerations of other relevant factors, such as [her] ability to remain quite active during the relevant period, also fails to support giving full credit to [her] alleged symptoms . . . ." [AR 29] To support this conclusion, the ALJ cited substantial evidence in the record, including: her ability to work during the period she alleged she was disabled; the fact that her employment ended only because she was laid off; her continued search for employment after she was laid off; her application for unemployment benefits during the time she claimed she was disabled; her participation in a master's program both before and after the hernia surgery; and the "sparse" medical treatment records from January to April 2016. [AR 29-31] The ALJ concluded that Ms. Vigil's "reported activities could not be performed if [her] physical and mental limitations were as significant as she alleged . . . ." [AR 31]

Ms. Vigil asserts that this evidence does not constitute "more than a scintilla of evidence when . . . weighed against the masses . . . of [her] medical concerns . . . ." ECF No. 16 at 22. I find this argument unpersuasive. Critically, it is wholly conclusory and unsupported by citation to the record. Ms. Vigil does not identify any medical evidence that counters the ALJ's conclusion.

I conclude that the ALJ's evaluation of Ms. Vigil's subjective symptoms under SSR 16-3p is supported by substantial evidence. That is, the evidence is sufficient "that a reasonable mind might accept to support the conclusion." *Campbell*, 822 F.2d at 1521. Therefore, this argument does not warrant remanding the case.

**III.     The ALJ's Application of the Treating Physician Rule**

Ms. Vigil argues the ALJ erred when he afforded the opinion of her treating physician, Clandra Robinson, M.D., little weight. Defendant responds by asserting that the ALJ's decision was appropriate, because Dr. Robinson's conclusions that Ms. Vigil had extreme functional limitations was not consistent with other evidence in the record.

The treating physician rule generally requires that the Commissioner "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2). When determining how much weight to give an opinion from a treating source, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the treating physician has offered a conclusive opinion; that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ

> must consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. . . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

16

*Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014); *see also* 20 C.F.R. § 404.1527(c)(2).

If the opinion of the treating physician is not entitled to controlling weight, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. This is because "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins*, 350 F.3d at 1300.

The factors the ALJ must consider are:

(1) The length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Without a discussion of these factors, remand is required. *Watkins*, 350 F.3d at 1300–01; *accord Krauser*, 638 F.3d 1330. However, the ALJ is not required to specifically analyze all six factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In this case, Dr. Robinson opined that Ms. Vigil had significant physical limitations. [AR 1063-67] For example, she found Ms. Vigil could stand for less than two hours and sit for a maximum of two hours during an eight-hour workday. [AR 1065] She also advised that Ms. Vigil should rarely twist or stoop; never crouch; never climb ladders or stairs; and could only use her

hands and arms for 5% of the day. [AR 1066] Her conclusion indicated that Ms. Vigil had maintained these restrictions since 2015. [AR 1067]

Ms. Vigil argues the ALJ erred both when he decided not to afford Dr. Robinson's opinion controlling weight and when he ultimately gave the opinion little weight. First, the ALJ never explicitly declined to give the opinion controlling weight, but merely stated he decided to afford it "little weight." [AR 32] The Tenth Circuit has approved of an ALJ's implicit decision not to give a treating physician's opinion controlling weight. *Armijo v. Astrue*, 385 F. App'x 789, 794-95 (10th Cir. 2010). The ALJ did so, because the opinion was "not consistent with the evidence of record as a whole in this case." [AR 32] Specifically, he cited to Ms. Vigil's unremarkable treatment history until mid-2016 and her improvement from the hernia surgery by early 2017. [*Id.*] He also cited to her participation in classes and her receipt of unemployment insurance benefits during this period. [*Id.*]

Ms. Vigil objects to the ALJ's decision not to grant Dr. Robinson's opinion controlling weight on these bases. She argues "the record contains ample clinical, laboratory, and imaging results to support Dr. Robinson's opinion." ECF No. 16 at 29-30. She also states "[t]here is no inconsistent evidence in the record." *Id.* at 30. The Court disagrees. As an initial matter, her statements are not supported by any citation to evidence in the record, and it is Ms. Vigil's burden to prove she is disabled. 20 C.F.R. § 404.1512(a). More importantly, the record contains substantial evidence that Ms. Vigil's restrictions are less severe than indicated by Dr. Robinson's opinion. Specifically, from April 15, 2014, to January 27, 2015, Dr. Robinson's treatment notes often indicated Ms. Vigil was alert and well appearing with appropriate mood. [AR 399, 402, 404, 407, 409, 425, 427, 431, 434] From February 2015 to July 2016, the record contains minimal evidence of medical treatment. She also recovered from the complications of the hernia surgery

18

by 2017. [AR 1023] The ALJ further noted that Ms. Vigil was attending classes during part of the alleged period of disability. [AR 32] I find that the ALJ's decision not to afford Dr. Robinson's opinion controlling weight is supported by substantial evidence.

Alternatively, Ms. Vigil argues that the ALJ's decision to afford the opinion little weight warrants remand. She asserts that the ALJ "made no attempt to apply" the relevant factors. ECF No. 16 at 31. In response, Defendant cites to the same evidence the ALJ used to determine Dr. Robinson's opinion was not entitled to controlling weight and argues the evidence appropriately addresses the relevant factors. The Court agrees with Defendant. At a minimum, the ALJ addressed three of the relevant factors in 20 C.F.R. § 404.1527(c)(2). Specifically, as discussed above, the ALJ considered the degree to which the physician's opinion is supported by relevant evidence, whether the opinion was consistent with the record as a whole, and other factors brought to the ALJ's attention that contradict the opinion. I conclude substantial evidence supports the ALJ's decision to afford Dr. Robinson's opinion little weight.

## **CONCLUSION**

The ALJ did not err in determining that Ms. Vigil was not disabled from October 20, 2015, through the date of his decision. Specifically, the ALJ did not err by failing to address the effects of Ms. Vigil's obesity on her other impairments. Further, the ALJ's evaluation of Ms. Vigil's subjective symptoms was supported by substantial evidence. Finally, the ALJ's application of the treating physician rule was proper. Accordingly, the decision that Plaintiff Cindy Lou Vigil was not disabled is **affirmed**.

Dated at Denver, Colorado this 14th day of May, 2019.

        BY THE COURT:

        *Michael E. Hegarty*

        Michael E. Hegarty
        United States Magistrate Judge